ELECTRONICALLY FILED
05/01/2024 9:15:54 AM   Central Standard Time
CLERK OF THE JACKSON COUNTY DISTRICT COURT
CASE NUMBER: JA-2024-MR-000153

| | |
|---|---|
| IN THE DISTRICT COURT OF JACKSON COUNTY, KANSAS | AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR THE PROPERTIES OWNED BY REX D. LARRISON LOCATED AT, 426, 420, & 418 EAST 6th STREET, HOLTON, JACKSON COUNTY KANSAS |

## AFFIDAVIT AND APPLICATION IN SUPPORT OF SEARCH WARRANT

I, Detective Philip G. McManigal, of the Jackson County Sheriff's Office and certified law enforcement officer in the State of Kansas, of lawful age, after first being duly sworn on oath, on information and belief states:

I have been a certified law enforcement officer in the state of Kansas for approximately 35 years. I hold an Associate of Arts degree in Criminal Justice (1977) and a Bachelor of Arts degree (1986) in Corrections from Washburn University in Topeka, Kansas. I graduated from the Topeka Police Academy in 1989. I served as Jackson County Sheriff from 1989 until 1997. I worked as a Special Agent and then Special Agent in Charge conducting criminal investigations for eighteen years for the Kansas Attorney General's Office. I retired from the Attorney General's Office in August of 2015 and began working as a Detective for the Jackson County Sheriff's Office in October 2015. I am a past member of the Capital Area Major Case Squad. I am a member of the Kansas Sheriff's Association, the Kansas Peace Officers Association and the Kansas Division of the International Association for Identification.

Your affiant has conducted investigations and received training regarding, but not limited to; sexual assaults/abuse, arson, homicide, computer crimes, child exploitation, narcotics, burglaries, thefts, forgeries and other person and property crimes. Your affiant has also completed numerous training hours in other fields such as interview and interrogation, search and seizure, crime scene investigation and evidence collections and processing.

Affiant has probable cause to believe, and does believe, that offenses against the laws of the State of Kansas has been committed, to-wit: **K.S.A. 21-6205: Criminal desecration (a) (1) and K.S.A. 5402: Murder in the first degree.**

Affiant has probable cause to believe, and does believe, that certain contraband, fruits, instrumentalities and evidence of such offenses are located in or upon the below described person, place, thing or means of conveyance.

**EXHIBIT 1**

### Place(s) or thing(s) to be searched:

White house with brown shingle roof, white metal storage buildings with orange doors, various metal shop and storage buildings, various storage trailers on land tract description S03,T07, R15E, beginning at intersection C/L Seventh ST & W ROW Minnesota Ave W4 12 S460 E280 NE 190 NE 160 N145 TO POB 426 East 6th Street, Holton, Jackson County, Kansas; to include the residence and all outbuildings, vehicles, curtilage and the physical person of anyone present at the time of service per K.S.A. 22-2509. Excluded are certain individual storage units pertaining to Quality Mini Storage, described below, which have been leased, rented, or otherwise controlled by persons who do not reside on the property 426 East 6th Street, Holton, Jackson County, Kansas.

A small white house located at 420 East 6th Street, Holton, Jackson County, Kansas, with a white roof located west of 426 East 6th Street, Holton, Jackson County, Kansas on a tract of land description Holton (O.T.), E75 Lots 71 & 73 Eastern Avenue Section 03 Township 07 Range 15E Lot width: 075.0 Lot Depth: 120.0 Deed Book/Page 136/76 128 /279 420 East 6th Street, Holton, Jackson County, Kansas; to include the residence and all outbuildings, vehicles, curtilage and physical person of anyone present at the time of service per K.S.A. 22-2509.

A tract of land immediately west of 420 East 6th Street, Holton, Jackson County, Kansas, Lots 75 & 77 Eastern Avenue & W75 Lots 71 & 73 Lot Width: 150.0 Lot Depth: 240.0 Deed Book/Page 136/76 128/279 418 East 6th Street, Holton, Jackson County, Kansas; to include all outbuildings, vehicles, curtilage and physical person of anyone present at the time of service per K.S.A. 22-2509. Excluded is the rental house at 418 East 6th Street, Holton, Jackson County, Kansas, a white house with a metal tan colored roof and two entry doors facing the south and a metal carport on the east side of the structure.

### Basis for Probable Cause

The facts contained herein and relied upon in this Affidavit are based in part on information provided by myself and/or other reliable law enforcement officers, business records, or publicly available information. The basis for the Affiant Detective McManigal's probable cause follows:

During the 1990's Sharon Fitzsimmons (Sharon) dated Rex Larrison (Rex). On November 11, 2015, Sharon reported to Detective McManigal that when she dated Rex, he lived at 426 E 6th Street in Holton, Jackson County, Kansas. He still lives there. Sharon said Rex was physically and verbally abusive to her. When they were together, he would not allow her to waive at anyone. He had a horrible temper and he was often mad at people for unknown reasons. He used to brag about sneaking around at night and vandalize people's property without being caught. She described an incident in which Rex once became upset with her because he did not like the

2

supper she made for him. He knocked her down, pinned her shoulders to the floor with his knees and told her that he is so smart that he could murder someone and never be caught. The last time she saw him, she found him lying on his bed, screaming and trembling. He was grabbing his head and yelling, "I am losing control of you. Sharon ran from the house. She has not had contact with him for several years mainly because she hides from him.

On April 4, 2000, Rex married his fiancé, a "mail order bride" Yulia Shevtensko (Yulia) in Las Vegas, Nevada. Yulia was a Russian citizen. She was not a United States (U.S.) citizen.

On May 26, 2000, Yulia opened a CD in her name at Commerce Bank in Topeka, Kansas with an unknown amount of money; # 2463790001 (Maturity date 1/26/01). The bank has an incomplete record of this account.

On June 20, 2000, Holton Police Department (HPD) Officer Corey Shields stopped Yulia for driving erratically. Yulia told Officer Shields that her husband (Rex) had not been treating her right so she left to get out of their house.

On July 5, 2000, Officer Shields took a domestic disturbance report from Yulia. She reported verbal and physical abuse to her by Rex as well as threats from him to have her removed from the country because she was not a legal citizen. Yulia spent the night in a battered women's shelter in Atchison, Kansas.

On July 7, 2000, while still in the shelter, Yulia filed a Petition for Protection from Abuse against Rex. She filed it in the Atchison County District Court. In the Petition, she alleged physical and emotional abuse by Rex starting from the time they married. Yulia wrote in the petition that Rex also threatened that the police would put her in jail because she did not have any rights in the United States. Yulia told shelter advocate Karen Noll (Karen) that Rex used to hit her in the stomach, threaten her, and smack her face. He also grabbed her by the throat and abused her mentally. Yulia told Karen that Rex frequently threatened her and she was afraid of him. Yulia said Rex also restricted her from being able to do things. If he let her go to the grocery store alone, he would follow her. Rex acted as if he was afraid Yulia was going to get away from him. The Atchison County District Court ordered Rex to "return to plaintiff all INS (Immigration and Naturalization Service) papers and forms for residency sponsoring. The Court further orders Defendant not to withdraw Plaintiff's petition I-130 and not to detrimentally effect the Plaintiff's immigration status" The Judge allowed e-mail communication only between Rex and Yulia.

Per the INS, an I-130 Form is used if you are a U.S. citizen or lawful permanent resident (LPR) and you need to establish your relationship to an eligible relative who

wishes to come to or remain in the United States permanently and get a Permanent Resident Card (Also called a green card).

Yulia told shelter advocate Karen that if she (Yulia) did not dismiss the Protection from Abuse order, Rex would kill or harm Yulia's brother.

On August 11, 2000, Yulia had the Protection order dismissed and she returned home to 426 East 6th Street, Holton, Jackson County, Kansas with Rex.

On August 14, 2000, Yulia and Rex met with I.N.S. officials in Kansas City and the record indicates they wanted to stay together.

On August 31, 2000, Yulia applied for and received a social security number.

On September 15, 2000, Yulia opened a savings account in her name at Commerce Bank in Topeka, Kansas with $200, #809454. (Commerce Bank later changed to CoreFirst Bank)

On September 22, 2000, I.N.S. notified Yulia that she was granted legal permanent resident status. No known record exists that Yulia ever responded.

On October 6, 2000, Yulia closed the above listed savings account and opened a CD at CoreFirst Bank with $8,581.36 #246379002 (Maturity date 6/6/2001).

On February 6, 2001, Yulia opened a CD in her name at the same bank with $1000 #2463790003 (Maturity date 10/6/2001). Yulia's bank accounts sat idle. As a result, her unclaimed money was sent to the Office of the Kansas State Treasurer unclaimed property division on 10/20/2008. The money, totaling $12,369.75 was never claimed. February 6, 2001, is the last known date that Yulia was alive.

On July 10, 2001, Rex filed a petition for default annulment of him and Yulia's marriage in Shawnee County District Court. The record indicates Yulia did not attend any of the court dates and was never located. Therefore, no notification paperwork concerning the annulment was served to her.

On August 20, 2001, Dan Robinson, a neighbor and associate of Rex reported to then Special Agent, now Detective Phil McManigal that after February 6, 2001, he saw Rex digging inside some forms he had set behind his (Rex's) house. Rex then poured concrete inside the forms the next morning. He said Yulia has not been seen since the day the concrete was poured. He said Rex towed the car that Yulia used to drive into his shop and dismantled it. Dan reported that Rex used to tell him that he could kill someone and get away with it, and that he could make a body disappear.

4

Based on overhead drone footage taken by Jackson County Sheriff's Maintenance Director, Kendall Holt (on July 1, 2019), Dan identified the area where he saw Rex digging on his property immediately prior to pouring concrete there.

On December 17, 2002, I.N.S. issued a Termination Of Conditional Resident Status to Yulia due to her and Rex failing to file a required joint petition requesting removal of the conditional basis of Yulia's residence between June, 22, 2002 and September 22, 2002. The notice terminated Yulia's permanent residence status previously accorded to her as of September 23, 2002.

On March 1, 2003, INS changed its name to United States Citizenship and Immigration Services (USCIS)

On December 9, 2015, Eben Crosby (Eben), a neighbor to Rex, reported an incident to Detective McManigal in which he agreed to pick up some chain link fencing material for Rex at a Kansas City warehouse in approximately 2007. Rex gave Eben a check for the material. When Eben arrived at the warehouse, an employee he described as a short, stocky, white male with a teardrop tattoo under one eye, either bald or very short hair and possibly, in his mid-fifties. The man asked Eben if he was "new at this" and if he was "frightened". He told Eben that he and Rex were business partners and together they have made bodies disappear. The man told Eben that he and Rex frequently "traded bodies". Another time, Rex called Eben in the middle of the night and asked him to come help him in his shop. When Eben arrived, Rex began yelling at Eben for no reason. Rex became very angry with Eben. Rex told him that he was going to kill him and "they will never find you".

Based on Eben's description of the man at the above-mentioned warehouse, Detective McManigal learned that his name might be "Steve Barlow". After an extensive search, Detective McManigal is so far, unable to positively identify or locate the man.

Using the following resources, Detective McManigal searched for and never found Yulia.

A search for Yulia of the following found no results: National Missing and Unidentified Persons (NamUs), Shawnee County District Court, marriage annulment docket, Consulate General of Russia, National Crime Information Center (NCIC), National Law Enforcement Telecommunications System (Nlets-KBI), Kansas Department of Revenue (KDOR) Driver's License database, Kansas Adult Supervised Population Electronic Repository (KASPER), Violent Criminal Apprehension Program (ViCap-FBI), Mid-States Organized Crime Information Center (MOCIC), National Central

5

Bureau (NCB) of Interpol MOSCOW, Federal Bureau of Investigation (FBI) off-line search, Accurint-Lexus-Nexus, Kansas City Airport Police, and The United States Department of State that utilizes facial recognition.

Also: Facebook, Google, United States Postal Service, Kansas Department of Health and Environment (KDHE), Kansas City Airport police, Immigration and Naturalization Services (INS), United States Citizenship and Immigration Services (USCIS) which includes a search of the Automated Fingerprint Identification System (AFIS).

Yulia is posted on the Kansas Bureau of Investigation (KBI)'s Kansas Missing Person's website: https://www.kansas.gov/kbi/missingpersons/missingpersons.shtml, (resulting in no responses), and Facebook's Kansas Missing and Unsolved organization: https://www.facebook.com/KansasMissingandUnsolved (resulting in one unfounded response).

An exhaustive search found no evidence that Yulia had ever left the United States, or that Yulia ever returned to Russia, her country of citizenship. No records or information has been found indicating that Yulia's husband of less than a year, Rex, ever reported her missing to any law enforcement agency. In accordance with Kansas law K.S.A. 58-712, Yulia is presumed deceased. Rex lived at the residence located at 426 East 6th Street, Holton, Jackson County, Kansas prior to his marriage to Yulia. Yulia resided at this residence with Rex during their marriage. The totality of evidence discovered during this investigation leads Detective McManigal to believe that Yulia is deceased, and the manner of death is homicide. Detective McManigal further believes that evidence of the crimes of homicide and criminal desecration will be located on the property at 426 East 6th Street, Holton, Jackson County Kansas.

On May 8, 2003, Rex applied for Elena Kristova (Elena), another "mail order bride", to enter the United States as his fiancé. Like Yulia, Elena was also a Russian citizen. She was not a United States citizen. They were married in Las Vegas, Nevada on August 18, 2004.

On September 19, 2004, Elena filed a Form I-485 (Application to Register Permanent Residence or Adjust Status) with the USCIS. This application was still on file when she passed away. Like Yulia, Elena never became a U.S. Citizen.

On June 19, 2006, a date Elena planned to visit a friend in a neighboring state; she was killed in Rex's shop on their property, 426 East 6th Street, Holton, Jackson County, Kansas. Elena died as a result of trauma to the face and head. Rex reported that he was moving a large unsecured steel and concrete bridge pier with a forklift and it accidently fell off the forklift and onto Elena, crushing her face and head. Detective McManigal believes the circumstances of Elena's death are suspicious,

6

and the injuries to Elena did not appear as severe as expected from the mass and force of the pier. The forklift was identified as a Clark forklift.

Although Elena had no signs of life, she was transported to the Holton Community Hospital (HCH). The medical staff there documented Elena's death as "suspicious". Elena was transported to the coroner with her jewelry still on. Nurses have training that includes instructions not to remove personal items from bodies if the death is suspicious.

On June 20, 2006. Dr. Donald Pojman performed an autopsy on Elena. His autopsy summary reads, in part, "This is the case of a 38 year old woman who died from crush injuries of the face. The injuries were consistent with a large object landing on top of the face. The manner of death depends on correlation with the police investigation".

Although he does not recall the date, Eben said he does remember that several years ago, a local man, Russell Scheid (Russell), who is an associate of Rex, was over at Rex's house with a huge backhoe. Russell was loading three 10 to 14 feet long galvanized "culverts" (bridge piers) that were about 2 feet in diameter into a semi-trailer box. The "culverts" had each end of them sealed with concrete. The semi-trailer, which has no running gear under it, was and still is located just southwest of Rex's shop.

Rex and Elena resided at 426 East 6th Street during their marriage. Rex still resides at this residence. Rex owns the property at this address. It is an approximately 3.78 acre tract of land. Approximately two thirds of the property contains 13 storage unit buildings, which is part of Quality Mini Storage, a business owned by Rex. The storage units on the property pertaining to the business Quality Mini Storage are all white in color with orange doors. The Quality Mini Storage business office is a small white building with an orange door, which is attached to the main residence on the property. The storage units are distinct from other buildings and outbuildings on the property. The remainder of the property contains numerous vehicles, storage containers, two white houses, heavy equipment, and other miscellaneous equipment and "junk". The area of the property is densely cluttered with these items.

On March 10, 2021, Vera Petrovna Ryabina (Vera), also a Russian bride, and a friend of Elena, told Detective McManigal that Elena's death was the result of a "fight" and Rex and Elena used to argue when Elena wanted to go somewhere alone.

Detective McManigal further believes that evidence of the crime of homicide of Elena, including the forklift and pier, will be located on the property of 426 East 6th Street, Holton, Jackson County, Kansas. Detective McManigal further believes that

7

documents and personal property belonging to Yulia Larrison and Elena Larrison will likely be located on the property.

Detective McManigal is aware that Rex had possessed at least two computers on his property. Chris Culligan, (Chris) a Technology Support Consultant, who has done some computer work for Rex, reported that Rex has a computer inside his residence and another laptop computer inside his business office. The computer inside the business office is where the data of the people coming and going to and from the storage units is recorded. Chris also installed cameras that send data to Rex's computer and possibly to his cell phone. Matthew Wilhelm, a previous business associate with Rex, reported to Detective McManigal that Rex kept copious amounts of records and documents located in his office within his business office on the property, and Rex generally did not throw things away.

Rex owns the properties west of and adjacent to 426 E 6th Street, which are 420 E 6th Street and 418 E 6th Street, Holton, Jackson County, KS. The residence upon the property 420 E 6th Street contains a white house that appears to be used by Rex as storage. This property also has a garage structure, and many vehicles. The property at 418 E 6th Street contains a white house that is occupied by renters. This property also contains several outbuildings and vehicles believed to be used and controlled by Rex.

## Particular Things to be Seized

This warrant allows for the search of the residence, all shops, offices, outbuildings, garages, storage containers, curtilage, all vehicles, trailers, tractors, utility vehicles, forklifts, construction equipment, any and all occupants present at the time the warrant is served and where the instrumentalities, fruits, evidence of violations of the offense of Criminal Desecration and Murder may be located.

This warrant allows for the seizure of evidence of human remains, including but not limited to; clothes, bones, flesh, body fluids, soil, teeth, hair, DNA or other indicators of human remains.

This warrant allows for the seizure of evidence pertaining to the disappearance and/or death of Yulia Larrison, and the death of Elena Larrison, including but not limited to; letters, bills, bank records, immigration records, photographs, driver license's, identification cards, or other documents; the personal property of Yulia Larrison and Elena Larrison, including but not limited to,

clothing, jewelry, purses, handbags, documents, and cellular phones.

This warrant allows for the seizure and search of computers, telephones, cell phones, tablets, or other means of electronic communication to include but not limited to all electronic storage devices such as SD cards, flash drives, removable memory cards and all internal memory and data storage. All incoming and outgoing phone logs and voice messages. Any and all text messages to include but not limited to incoming and outgoing text messages, text message drafts, incoming and outgoing e-mails. All photo albums or photographs be it memory in a message such as text message or e-mail or stored in the memory of a phone or other electronic storage devise. Any or all contact and customer lists to include name, address, phone number or any other information to identify possible contacts that may be potential witnesses. Passwords, combinations, codes or other information used to gain entry to electronic devices, letters, bills, bank records, and immigration records.

This warrant allows for the seizure of evidence pertaining to the control and occupation of storage units upon the property, also known as Quality Mini Storage, including but not limited to; computers, digital storage devices, customer lists, and business documents. Law Enforcement Officers may search these computers and documents for evidence and information pertaining to the control, occupation, and/or leasing of individual storage units.

This warrant allows for a search and examination of the premises for the purpose of making a record of the surroundings where Yulia Larrison potentially disappeared and/or passed away; and where Elena Larrison passed away. This includes seizing any and all bridge piers, and a Clark forklift for examination and testing. This search also includes, the use of mechanical and hand held excavating machinery, ground penetrating radar equipment, the use of canines trained in the detection of human remains, collection of photographs, recordings, diagrams, measurements, three dimensional laser scans, trace evidence, weapons, or indicators of a cause of the disappearance and/or death of Yulia Larrison and/or the death of Elena Larrison.

Law Enforcement Officers may search for keys, combination codes, passwords, passcodes, or other information used to gain entry into storage units, building, contains, vehicles, or trailers upon the property. However, recognizing that a storage unit business is located on the property, Quality Mini Storage, and recognizing that individual storage units pertaining to Quality Mini Storage have likely been leased, rented, or otherwise controlled by persons who do not reside on this property, the search of any such storage unit(s) is prohibited with the following exceptions:

   - Any and all units found without a lock, or without a locked locking device may be searched in accordance with this warrant, unless or until officers have a reasonable belief that the unit has been leased, rented, or otherwise controlled by persons who do not reside on this property.
   -Locked units with no known record of being leased, rented, or otherwise controlled by persons other than residents on the property.

9

- Law enforcement officers serving this search warrant, and any person requested by law enforcement officers to assist with the service of this search warrant, may utilize canines trained in the detection of human remains to walk around, near, in front of, behind, on top of, or beside the exterior areas of any storage unit for the purpose of searching for the scent of human remains, however they may not enter the storage unit in which they have a reasonable belief the unit has been leased, rented, or otherwise controlled by persons who do not reside on the property.

**WHEREFORE**, Affiant prays that a search warrant be issued, according to law, to search for, apprehend and seize, the above-described items, if any there be, holding them to be dealt with according to law.

_____
Philip G. McManigal, Affiant

SUBSCRIBED AND SWORN to before me this 16 day of April, 2024

_____
~~NOTARY PUBLIC~~ District Judge